All right, thank you. Please be seated. I'm glad you all did make it. All right, so now we are going to turn to the last oral argument today for this panel, which is case number 25-50092, Gonzalez v. El Centro Del Barrio. And we will begin with Matthew Freitas. Am I pronouncing you right? May it please the Court. Matthew Freitas, along with Rosie Dawn This is a classic case of who decides. Who decides whether a federally supported health center with a federal immunity has that immunity? The Attorney General through an unreviewable decision or the federal courts? And this question is coming up in the context of two officer removal statutes, the Public Health Service specific statute and then the general officer removal statute. The district court below essentially followed the path that was laid out in an unpublished Third Circuit decision that was rejected by a fairly recent Ninth Circuit published decision penned by Judge Bybee that really lays out and unpacks the Public Health Service Act removal provision. Essentially what it requires is the Attorney General to report the Secretary's deeming decision. That's a decision that affords the federal status to a federally supported health center and its employees. That decision was unquestionably made. It's a decision also that by design in the statute has to be made in advance of a period, like an insurance policy. When you ask for coverage, you do that in advance of the period for which you want coverage. You don't do it after the fact. So it's a very readily identifiable decision. It doesn't take more than 15 days to determine whether in the past the Secretary deemed a health center for that particular period or not. Where are you getting the deemed language from? That's from 42 U.S.C. Section 233G. Oh, it's not L1 or 2? Oh, in L1 or 2? So that language is the reference to subsections G and H. So in 233L1 I'm looking at 233L1. In 233L1, the Attorney General within 15 days of being notified of such filing shall make an appearance in such court and advise such court as to whether the Secretary, not the entity, is deemed. Well, I must be looking at a different statute because it says within 15 days the AG shall make an appearance and advise as to whether such entity is deemed to be an employee of the public health service. Isn't that the section? Deemed to be an employee of the public health services for purpose of this section with respect to the actions or remissions that are subject to such civil action or proceeding? Is that not the operative language? I have 233L1 right in front of me and I don't see that language there. I was reading right from it. The language in 233L1 expressly references the Secretary has determined under subsections G and H of 233. I guess my ultimate question really is, isn't it not just deemed, whether there was a deeming decision made at some time in the past, but deemed with respect to the actions or omissions that are the subject of such civil action or proceeding? Correct. And then that phrase is where a lot of the controversy comes from, that the Ninth Circuit resolved in favor of the position that we're espousing here today. And that is, that is simply to indicate the period that the deemed determination is, which determination was relevant. So when you have a claim against an entity, you have to know two things. Is it deemed? And is it deemed in the year in which the events that give rise to the lawsuit occurred? Whether you're deemed in 2002 may not matter if the events occurred in 2003. Okay. I'll take your word for it that the Ninth Circuit has interpreted the language in that way, but that's not what the language says. Deemed with respect to the actions or omissions that are subject to such civil action or proceeding. And the reason that comes up here and in a kind of a pointed way is because the allegations here are with respect to a data breach from a, what, from a medical facility, right? Yes. Okay. So that's all of a sudden I'm like, well, does that line up with why we have the removal statute? Because it's not, I mean, is that really with respect to medical dental services? That gets into the coverage aspect. So yes, that absolutely is going to be an issue for the case. But at this stage, we're just at the removal stage. Like at 1442, you don't have to win your defense before you can get into federal court to assert your defense. Much like that in 233L1, you just have to be a deemed entity for the period. And it also never gets invoked. All right. You're just saying with respect to the actions just means time period? It identified, I mean, the Ninth Circuit added additional, gave additional meaning to it, which I think is fine. I wouldn't, I don't, I don't think it's necessary. I think it essentially, it tells you where to look. The complaint exists and the complaint tells you what year to look. And the complaint is what contains the accident admissions. The complaint is where the allegations are made. But if it was just about time, doesn't that render the phrase that Judge Duncan just pointed out surplusage? Why include that at all? Why not just say the Attorney General has to appear and advise whether this entity was deemed during this time period? Because if the, well, you have to know what time period, Your Honor. So there has to be some language directing you to what time period matters. True. But time period is different from actions or omissions that are the subject of civil action. That, that language tells you what year to look at because health centers get deemed in annual increments. It's like getting an insurance policy every single year. Also, the government can decide not to give it to you if you're not playing the game the way the government likes. So health centers have a real incentive to play the game the way the government likes. That's why there's, and there's also the history behind this provision which is most evident from the change in the statutory language from what was in 233, I'm sorry, in the FISCA, the Federally Supported Health Centers Assistance Act, when first enacted in 92 to 95. It shifted into a provision from 92, there was nothing that prevented the Attorney General from weighing in on the deeming determination. In fact, the Attorney General was, was, there was a consultation requirement within the provision. That was stripped out. There was no removal provision. That was added. And the, and the provision was made final and binding on the Attorney General, which is a peculiar statutory effect where you've got two secretary department level, sorry, department level, cabinet level officials in the same statute with distinct roles. And I think that's where Judge Bybee really did a service to this whole area. The first judge to really have weighed in and made sense out of these determinations, to have one determination by the secretary binding on the Attorney General, that's a big deal. The reason it exists is because the Attorney General is responsible for a subsequent phase, the acts or omissions phase when it gets to the scope of employment. Those are two different phases. Scope of employment is the, the Attorney General's bailiwick. That's, is this case covered? Acts or omissions is, is this a case for which we have to make those determinations? Is this a case where you're redeemed for the year in which the events occurred? It's possible the answer to that is no. But you just added language that's not in the statute, for the year in which the actions or omissions occurred. That's essentially what Bloomberger does. I'm, I, I am interpreting the phrase, the phrase, like I would have written the statute differently. And I think Judge Bybee, you know, made the same sort of comment that you could write the statute more clearly. And it's, and what's challenging, and this is the judge, I'm sorry, you have the hard job just like the Ninth Circuit did. Are you asking us to read it as what it should have said versus what it actually said? No. No, you can read it exactly as it says and just understand acts or omissions and insurance speak concerns when events occurred. That's the, that's, acts or omissions is, is insurance language speak, which isn't the greatest language in the world, but you have to, when you have an acts or omissions policy, that's a, that's insurance speak and acts or omissions coverage policy. It's for acts or omissions when, when the complaint alleges they happened. That's the nature of it. It's just, so it, is it the best language? No, I, I am not changing the language, Your Honor. I'm just speaking it in a more colloquial way or trying to anyway. Look, I mean, Judge Bybee taught me constitutional law, so I'll, I'll go and, I'll go and read his opinion. I'm sure it's very good. We haven't, our circuit has not. Have we definitively interpreted the language? No, Your Honor. Okay. All right. So Judge, Judge Bybee's decision is the first to really have dug in. I think it, maybe while we're talking about decisions, it's important to point out that he also made sense out of the less, uh, robust decisions on this issue. Like, um, Celestine, actually he didn't, I don't think he dealt with the second circuit. He dealt with Allen v. Christianberry, 11th circuit, and he dealt with El Rio, the DC circuit. Both of those cases are easily misunderstood. Well, is this a quote from Blumberger's ninth circuit decision we're talking about, right? Yes, Your Honor. Okay. So did it, did it not also say during the relevant time period? Yes, I would, we want to know whether there was a deeming decision, but also whether the complaint arose out of the performance of medical, surgical, dental, or related functions. Is that not also part of the, it is, the attorney general is supposed to. The tricky part of that is the court also made very clear that there are only two determinations at play at the removal stage, just two. There's the advanced deeming by the secretary and there's the specific litigation specific coverage decision by the attorney general. And the, and the ninth circuit anyway, made clear there is no additional determination. You don't read another determination into that language that is a coverage determination specific to that particular case. It's more about, is this a deemed entity claiming and requesting coverage for events that occurred during one of its deemed years, yes or no? If yes, you get into federal court and the federal courts resolve the disputes as between the attorney general and the, and the claimant, the, the, the health center claiming immunity. Is this case really about what the phrase fails to appear means? That is a critical phrase for L2. I mean, what the ninth circuit concluded was that L1 drew, drove the result. The attorney general was obligated to come into court. I'm going to answer your question, Your Honor. The, the attorney general was obligated to come into court because there was a deeming determination for the year at issue. That's exactly what we have here. So there's no question the ninth circuit would have concluded there was a deeming determination for the year and the ninth circuit decision says that's what matters for removal. The fails to appear, the, the government and the plaintiff and the district court below treat that to mean it applies to appear only. And because the words to advise are not there, that it only matters if they appear. That's it. If they appear, game over. They can stop the review that otherwise would happen. And what that really does is it ignores, well, first of all, it's fail. The word fail does sort of suggest you had a duty to do something and if you fail to do the thing and appear is not a heavy duty. Advise is not a heavy duty, but the fail to appear has to be understood in parent material with the 233 L1 second sentence. There's only two sentences in the provision. First one's a mouthful. The second one's less of a mouthful, but it's there and it leads off with the phrase, such advice shall satisfy 233 C. Such advice, not advice this way will and advice that way will not. Such advice, meaning whatever appearance the attorney general, if he, if the attorney general shows up, that satisfies the appearance. That satisfies the second sentence of 233 L1. It's there for one reason. It's a removal provision. And if the attorney general doesn't want to remove, don't show up. It's that simple. Don't do what you did historically. You don't show up. Remind me of what happened here that the attorney general did show up, but didn't, didn't initially make the certification. Yes, Your Honor. Well, the, the, and this is, it's amazing. The government, when they want to, super prompt, the government showed up in four days here, lightning speed. Why? Not to protect the defendant. They left the case in state court, subject to litigation. When you have immunity, subject to litigation, that's inconsistent with immunity. Not to protect it from default judgment. There's no stay in the state court. So they show up for what reason? They show up so they can make the argument that their showing up reserves for them the ability to say not covered and have it be unreviewable. That is taking a provision that Congress enacted in 1995 for the benefit and protection of deemed defendants and turning it into a mechanism where they can preclude review of their decision. That's, I don't think Congress snuck into the provision. It's like an elephant in a mouse hole thing, I think, is it, is it, Justice, uh. So you're saying that they showed up after four days, they didn't, I just don't remember. Oh, sorry. So they said under consideration. They showed up after four days, they said it's under consideration. Correct. And then after a certain number of days, they said, they said what? After a certain number of days, they said, not deemed for the acts or omissions alleged. Okay. The first one they said, deemed, not for the year or any particular year, deemed, but we don't know whether they're covered. Okay. And then the. Was the idea, I don't know if the government was explicit about this, they can tell me, is the idea that it was a data breach doesn't arise out of provision of medical services? That's essentially their position, what the Fourth Circuit concluded. There are courts that have reached contrary conclusions, that's the only circuit court case out there. Okay. It's going up to the Ninth Circuit, it's going up to the Second Circuit. Okay. Um, I think the best reasoned decision is out of the Southern District of New York, that was just before the Fourth Circuit's decision, but the point being that federal judges have reached different determinations as to whether a related function is the protection of patient information. On that point, even though I would say that's not the issue before this court, it's not being asked to decide the immunity issue, but on that issue I'd like to say two things. Do I have only this amount of time total, or this amount of time without my reserved rebuttal? You have it until, it's not your rebuttal. Okay, thank you. Um, I shouldn't have asked, I lost my train of thought. Well, I mean, I think what you're saying is that the coverage decision shouldn't be part of the removal calculus, is that right? Yes, yes. So what I was going to say was the, the government and the plaintiff are relying upon an immunity merits decision, which could only happen if a district court had removal jurisdiction. So it sort of, um, contradicts their position on the issue that is before the court, removal jurisdiction. They're invoking case, a case, their main case is a case in which the district court exercised 233 L2 and 1442 jurisdiction. The government didn't even appeal the favorable immunity determination the chief judge there reached on data breach. The chief judge said covered. Fourth Circuit reversed, but there was no appeal as to whether the district court could make that decision. And that's what this case is about. Who decides? Does the district court and then the fourth circuit? If the district court can't decide, neither could the fourth circuit. So you can't invoke a decision that reaches the merits issue and, and ignore the underlying reason it got there in the first place. Could it be about who decides at this point? Could what, could what be your honor? Who decides the coverage decision at this time? Could the, if you look at 2679? Yeah. Which the dissent did in Bluebird. Uh, it provides a process for an employee who's denied certification by the government to challenge it by petition to the court. Yes. This statute also makes reference to a petition if the government fails to appear. So why isn't there some mechanism for a, an entity deemed not covered to challenge it by a different proceeding? Why, why are we looking at the general who, who makes the final decision about coverage versus who makes the decision for, uh, about coverage for purposes of removal? Well that I believe 233L1 and 2 are speaking to getting into federal court and 233L2 is I think has language that answers your question, your honor, where it says the court shall conduct a hearing and make a determination. That language shall conduct a hearing and make a determination. That's the meat and potatoes of federal courts, conduct hearings and make decisions. That's the, that's the authority that reflects the court's ability to make this call and not to just simply like in the Demartinez v. LaMagno case that was about 2679, um, it's not for the federal courts to just rubber stamp what the attorney general says. It's for federal courts to decide. You have reserved time for removal. Thank you, your honor. Not a lot of time, but three minutes. Okay. We'll now hear from Laura Van Node, uh, for Gonzalez. Good morning, your honors. Uh, I would like to start where we just were with 233. So I think that, um, the court has already recognized that the language of 233 can be a little bit confusing, but it's not so confusing that we can't follow the path that is laid out in 233. It's up to Congress to make the laws. It's up to the court to enforce those laws as they are written, even if we don't like it, even if the appellant wishes that the rule was different. The way that it works is the defendant doesn't have a right to remove unless the attorney general fails to do what they're required to do under the statute. Now I want to talk again about that subsection regarding how this process works. Under subsection L1 and 2, those are the two ways that this can be done. The first way it can be removed is by the attorney general when the attorney general appears and makes this advisement. Now the language doesn't say that the attorney general must come and tell you their ultimate decision about whether the acts or omissions in the claim fall under this statute. It just says they have to come before the court and tell them whether the secretary has made this type of decision. And it's not just are they a deemed entity in that time period. If the, if Congress wanted it to be are they deemed during the time period when the acts happen, they would have written it that way. They didn't write it that way. They're talking about the acts or omissions that are part of the claims in that case. That's why you have an attorney general involved. The secretary could easily create a database, for example, that says these entities are deemed for this year. And nobody would have to go and find that information. It would be readily available. The reason why the attorney general is involved here, one, is because they're qualified to make that type of determination, to look at the facts, to look at the allegations, and to make an analysis. And also because the mechanism is they need to appear in court and tell the state court what the status is. So that's the only circumstance where the attorney general is removing, right? Subsection 2 is the only circumstance under which a defendant can remove. Now, I understand that they might not like that. That's the way the statute is written. They can only do it if the attorney general doesn't appear and make this advisement. So I think that the statute is very clear. Bloomberger does this sort of logical acrobatics, I think, because they don't like the way it's written. They don't like the result. They want to have the power to make the rule a matter of fact power. You don't agree with Bloomberger? I do not agree with Bloomberger. Can you tell me, maybe you said this and I missed it, but you were talking about Section 233L1 and 2 as two avenues for removal. Yes. Right. What's the relationship between those two sections and the preceding Section 233C, which is, upon a certification by the AG that the defendant was acting in the scope of his employment at the time of the incident, out of which the suit arose, any such civil action proceeding commenced in a state court shall be removed without bond at any time by the attorney general? Yes. I think that this is very helpful to see that these are related, because at the very end—We're on the same statute. That's why I asked. Well, yes, but I think that it could be more confusing to have two different areas of a statute that talk about this scope of employment issue and not have the statute tell you how they're supposed to be read together. So here it says that the certification, if the AG appears and they're able to say, yes, this claim arises under the acts or omissions that the person is deemed an entity for, that that also means they've satisfied Subsection C that they are acting within the scope of their employment. So it's really both of those questions, right? So there was a case where, you know, a doctor and this is not, again, this is all outside our circuit here, so, you know, take it for what it's worth. A doctor was working at a hospital and also worked at one of these clinics, and he was sued for a medical malpractice case. He was a deemed employee at that time. It was medical care, but he was at the hospital, not at the clinic that day. And so you can have situations where they're not exactly the same answer, which is why you have to have both. But it's sort of a, you know, rectangle square thing. So I think the statute is clear. I think Bloomberger is incorrect. We do already have a circuit split here with the D.C. Circuit, the Eleventh Circuit, and the Third Circuit all saying the defendant can only remove if the Attorney General does not appear. So I think that the Court should side with that. I think that's a clear reading of it, and I think that the you know, if Congress wants to write it differently, they can write it differently, but we have to take it the way it's written. And the way it's written is that the Attorney General does have that power. And not every decision that the executive branch makes is reviewable by a judiciary branch. And I think that this is especially clear because the only reason the Court would need to be involved is if the Attorney General didn't do their job. And the risk would be if they don't appear, then there could be a default judgment because the defendant doesn't have the ability to take this action on their own. So that's why that was put in there for that narrow purpose. You know, Bloomberger comes up with this scheme where the Attorney General is supposed to go ahead and just remove the case, and then if they don't think it should be in federal court, then they should file a motion to remand, right? The same party is going to have, they're going to have to plead that there's jurisdiction in order to remove it, and then they're going to have to plead that there's not jurisdiction in order to remand it. It makes no sense at all. It's not, it's a creative solution that they came up with, and unfortunately it's just not how the statute is written, unfortunately, for these clinics. Appellant didn't address 1442. I can address that if the Court would like. I don't think that, I think really the bigger question here is Section 233 and how we should read it. I will make one final point on that, which is that because this is a data breach case, it is not a medical, dental, surgical, or related function. But the Court doesn't need to reach that because it never should have been removed to begin with. So, with regard to 1442, which was obviously in existence before this Public Health Service Act came into place, it doesn't make sense that Congress would create a new statute for the Public Health Service Act if 1442 already created blanket immunity for these types of entities. So, we don't believe that 1442 grants immunity to these types of clinics. They are not directly controlled by the government. They receive government funding, many things receive government funding, and that amount varies. There could be clinics where it's only 5 or 10 percent of their actual funding coming from this one source. They do have to follow lots of really specific guidelines about how they operate, mostly because that protects the public, ensures that these clinics are providing care in underprivileged areas and probably in challenging circumstances in a way that's fair and serves the public, but lots of industries are highly regulated. That doesn't mean that they turn into the government because they're highly regulated. So, with that, I will ask that the Court affirm the District Court's ruling finding that remand was both impermissible under 233 and untimely under 1442. Thank you. Okay, we will now hear from Oriya Mittal, who is here on amicus curiae for the U.S. We appreciate you coming. I'm sorry if I misstated your name. No worries. Good morning, Your Honors. May it please the Court, Oriya Mittal for the government. Removal was improper under both Section 233 and the Federal Officer Removal Statute, but before I get into each of those in depth, I just want to address a few of the points that have come up this morning already. First, I think as my colleague pointed out and as Judge Duncan and Judge Ramirez, you identified earlier, L1 and L2, subsections L1 and L2 of Section 233, don't say that being deemed is enough to warrant removal by either the Attorney General or by the health center. That reading is a textual and doesn't really have a textual hook. Subsection L1, as Your Honors were reading from earlier, refers to, has a number of parameters that need to be met before removal is appropriate, including the language you identified earlier that the case must be won for damages described in subsection A of Section 233 early on, and that sentence, and then later that the entity must be deemed for purposes of this section with respect to the actions or omissions that are the subject of such civil action or proceeding. And even the Bloomberger majority, and we can talk a little bit more about Bloomberger if that would be helpful, but it recognized that the government may provide negative advice to the State Court if the acts or omissions identified in the complaint fall outside the category of services for which the defendant is deemed. And that's on pages 1130 and 1131 of Judge Bivey's decision. So because this is a data breach suit and those are acts or omissions alleged in the complaint that clearly fall outside of the scope of services for which Centromed was deemed, even on that reading of Bloomberger on the panel majority's reading, this case falls outside the bounds of Section 233 and removal was improper under 233. This sort of brings me back to one of the points from our brief that this isn't a case nearly as complicated as the cases that have divided various courts around the country because the Attorney General timely appeared and advised the State Court and provided the advice that was necessary within 15 days. That alone meant that the health senator wasn't entitled to remove this case to federal court under subsection L2. That removal right is only triggered if the Attorney General fails to timely appear and advise and the Attorney General did so here. So this isn't, this isn't, this is a fairly straightforward case by comparison to some of those other cases that other courts have considered. The facts patterned here is a lot simpler. Can you shed some light on the discrepancy between the date on the supplemental notice of July 23rd and the file stamp in the record that has July 30th and administration on it? So, Your Honor, yes, the, as we explained in our letter to the court from a couple of days ago, our understanding is that that filed stamp, it notes that it's from Bexar County, it's from State Court. The stamp that is on the copy of the supplemental notice that the, that Central Med's brief references that says July 30th, administration, doesn't look like that filed stamp. And so we cannot say that that's a document from the State Court that supplemental copy of the supplemental notice that's in the record, I think at 116 and 117 of the ROA, I think that's attached to Central Med's notice of removal. And so we, we can't identify where that stamp is from, but it looks, it is the same stamp that is also affixed to a copy of a letter that the government sent Central Med. And so there's been some speculation, there was speculation in district court that that stamp was not affixed by the State Court, it was in fact affixed by Central Med. I don't, I don't know one way or another specifically, but what I do know is it does not look like the filed stamp that the State Court clerk's office affixed on those earlier pages in the record that are, that sort of appear on the top left corner, have the Bexar County clerk's office name on, insignia on it. It just says July 30th, administration. So the Attorney General did timely appear by July 23rd, which is the date on the supplemental notice above the signature block. It's the date of the letter that the government sent Central Med saying that the acts or omissions alleged in the complaint were not ones for which it was deemed. And that's within 15 days of the Attorney General being notified of the suit. And so the, the appearance and the advice were timely under the statute. And so that, that alone would have precluded removal under Section L2. I want to kind of just pivot really quickly to our other alternative reason, our second reason that removal under 233 was improper, which I think we talked about briefly earlier, which, which is that subsection L1 of 233 only applies in cases for damages described in subsection A. And that, that cross-reference to 233A references the language that says that 233A covers suits for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions. And this is a suit claiming damages arising from a data breach at Central Med. Those aren't, that's not a kind of, the kind of suit that 233A talks about. And it's not the kind of suit that even triggers 233L's removal provisions. So that's an entirely separate reason that removal under 233 was improper. This Court could affirm on either ground, but in any event, the fact that this is a data breach suit essentially points in the same direction, no matter which pathway you take here. One would be a procedural pathway, I guess, if that's the right word. The Attorney General did appear. The Attorney General made the certification. Therefore, L2 does not provide an avenue for removal. Is that right? That's right, Your Honor. And the one you said before, which is more substantive, which is, well, the damages alleged here are not personal injury resulting from performance of medical, surgical, dental, or related functions. That's right, Your Honor. And both are tethered to the text of L1. I think that's what should provide the court center. I just pulled up the statute because I've been looking at it in terms of specific subsections. That's right. I'm trying to look at it. It's very long. Very long. Anyway. Yes. I think the important thing here, and for your purposes, is both of those pathways are, have specific textual hooks in L1. And so you can be comforted that both of those, both of those pathways are available here for affirming remand. I've said this already and I missed it, but what is your view of the Blumberger decision from the Ninth Circuit? Is it, your colleague disagrees with it, I believe. Your counsel opposite agrees with it. What's the United States view? The government's position in this case on appeal is that under Blumberger's reasoning, the district court's remand order was appropriate because even on the majority of reasoning in Blumberger, this was not, this was a case in which the Attorney General properly provided negative advice because these are acts or omissions identified in the complaint that fall outside the category of services for which the defendant is deemed. And that's a quote from Judge Bivey's decision. And so even on the reasoning of Blumberger But you don't think we need to fix the split in our own decision because you think it all means remand? That's right, Your Honor. And that's also because we're not, because in this case the Attorney General timely appeared and advised. It doesn't implicate some of the other questions that were percolating in Blumberger or in those other cases that are all, that my colleagues referenced that are in tension with each other, which had to do with other scenarios in which there wasn't necessarily advice provided within 15 days. But here there was, and so this is a much more clear-cut case insofar as all pathways point to remand. And just sort of briefly to touch on 1442, removal under that provision was also improper for two independent reasons, and I can go through them really quickly. The first is that the removal was untimely. It was effected 37 days after receipt of the complaint. And the second is that Centromed is neither a Federal officer nor was it acting under a Federal officer for purposes of the removal statute. And so it was, removal was substantively and procedurally improper under that statute as well. So I think the district court's remand order should be affirmed, and I welcome this Court's questions if there's anything else. Any questions? Judge Ramirez? Judge Duncan? Okay. Thank you very much.  And now we will hear the rebuttal. Thank you, Your Honor. I want to start with the damages piece. That's a classic conflating the scope of the remedy under the FTCA, which is Title 28, and the scope of the immunity, which is the Public Health Service Act. They are two separate and distinct legal determinations. The Hui v. Castaneda Supreme Court case, citing U.S. v. Smith, I believe, makes that point very clear. I guess the reason it resonated initially with me, the point that the government made, was because the L-1 subsection refers back to subsection A. That's where she was getting that argument. Yes. And it is all about whether the immunity applies. You're removing for the determination that's referenced in 233 L-2. 233 L-1, there's nothing wrong with the government, the Attorney General, being required to appear to effectuate a removal, even in a case the government doesn't think should be covered. The plaintiff suggested that's a silly setup. That's precisely the setup that's in 2679 D-2 and 3, the Westfall Act. That is exactly the situation Congress enacted. So the government, if there's differences between the statutes, those differences, I think, produced a better removal scheme for deemed defendants than exists for actual federal defendants, in part to solve for the government's unwillingness to remove cases and to defend deemed health centers. So those changes were made deliberately. But in 2679 D-2, if a federal government employee petitions a state court for coverage, the government comes in, removes that case to federal court, and says, if this is their position, we don't think they're covered, in a motion to remand, the very case they removed. So that happens. There's nothing unusual about that. As to having two removal statutes, there's no wrong problem with having two rights, two procedural rights. Here, the 1442 provision wasn't working for deemed defendants as well as it could have. And as the agent, the case I think plaintiff's counsel was referring to but didn't name was Agent V. Rasmusson out of the Second Circuit, that court plainly said, these are two distinct removal provisions that operate differently. And there is some overlap, but there is distinct non-overlap. And I think the most distinct non-overlap is illustrated in that very decision where the Second Circuit said, if a defendant had removed under 1442 only and did it untimely, and there was a timely objection, which the court ruled on in favor of the motion to remand and it was sent back, that defendant who removed does not get their federal immunity defense heard in federal court. L-1 and L-2 of the Public Health Service Act, Section 233, solves that problem. And it has a much more generous removal scheme, which should work to the advantage of deemed defendants, not to their detriment. And it's any time before trial. So without that provision, the defendant who invoked only 1442 would not have a means to get into federal court. That's a significant difference. Thank you, Your Honor. We appreciate both sides' argument. The case is now under submission. And we have concluded this panel's oral